IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT P. TREGO, | : | CIVIL ACTION NO. **4:CV-07-002** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Albert P. Trego, is seeking review of the decision of the Commissioner of Social Security (Commissioner)[1] that denied his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to Titles II and XVI of the Social Security Act (Act).  42 U.S.C. §§ 401-433, 1381-1383(f).

## I. PROCEDURAL HISTORY.

Plaintiff protectively filed applications for DIB and SSI on August 15, 2005, alleging disability since July 21, 2005 due to a left direct hernia.  (R. 48, 70, 115, 121).  The state agency denied his claim initially.  (R. 115-18).  Plaintiff filed a timely request for a hearing (R. 24) and a hearing was held before an Administrative Law Judge (ALJ) on June 12, 2006.  (R. 135-64).  At the hearing, Plaintiff, represented by counsel, and a vocational expert (VE) testified.  (R. 140-63).  Plaintiff was denied benefits pursuant to the ALJ's decision of September 22, 2006.  (R. 11-19).

Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 10).  Said request was denied on November 9, 2006 (R. 6-8), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g) (1995).

---

[1] We have substituted the present Social Security Commissioner, Michael J. Astrue, as the Defendant herein.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 7 and 10).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428

(3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity." *See* 20 C.F.R. §§ 404.1520(b), 416.920(b) (1995). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id*.

In the instant matter, the ALJ proceeded through the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 14-19). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since the alleged disability onset date, July 21, 2005. (R. 16). At step two, the ALJ concluded that Plaintiff's borderline intellectual functioning was a severe impairment within the meaning of the Regulations. (R. 16).

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal the requirements under the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (R. 17). The ALJ

paid particular attention to Listings 12.05 and 5.00, *et seq.*, of Appendix 1, but found that Plaintiff failed to meet the listing requirements. (R. 17).

At step four, the ALJ found that Plaintiff could perform his past relevant work as a farm worker, as generally performed, and a general small parts assembler, as performed by Plaintiff. (R. 18). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (R. 18). 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ further found that Plaintiff has the residual functional capacity (RFC) to perform at least medium duty, unskilled work. (R. 18).

**IV. BACKGROUND.**
   *A. Factual Background*.

Plaintiff was born on January 8, 1946 and was sixty years old at the time of the ALJ's decision. (R. 48, 140). Thus, he is considered a person of "advanced age" under the Regulations. 20 C.F.R. §§ 404.1563(e), 416.963(e). Plaintiff completed seventh grade and dropped out of eighth grade. (R. 140-41). After dropping out of eighth grade, Plaintiff obtained a work permit and worked on a dairy farm. (R. 141).

Plaintiff lives in a two story home. (R. 81). He rents out a room in his house and receives rental income. (R. 81, 142). Plaintiff receives no other income. (R. 142).

In the early 1990s, Plaintiff worked for temp agencies doing light industrial work. (R. 147).

Plaintiff last worked the summer prior to the ALJ hearing as a fence erector. (R. 142). Plaintiff stopped working on July 21, 2005 because his boss replaced him with a younger worker. (R. 143). Plaintiff stated that he did not have any trouble physically performing this job, though he had pain once in a while from his hernia surgery. (R. 145). Plaintiff usually lifted eighty pound bags of cement at this job. (R. 145). On one or two occasions, he lifted forty pound bags of cement. (R. 153). Plaintiff stated that "there was nothing wrong with [] [his] work", his boss "just had personal feelings." (R. 146).

Plaintiff applied for jobs after leaving his fencing job in July 2005, however Plaintiff believes he never obtained another job due to his age.  (R. 144).

Plaintiff experiences pain when he lifts.  (R. 149-50).  For example, Plaintiff experiences pain when he lifts a lawnmower or firewood.  (R. 150).  The pain sometimes lasts up to one week.  (R. 150, 153).  Plaintiff takes over-the-counter medication to treat his pain.  (R. 151).  When working, Plaintiff continued to work with the pain and tried to work around his pain.  (R. 153-54).

Vocational expert, Paul Anderson, classified Plaintiff's past work as a landscape laborer, agriculture laborer/farm worker II and small parts assembler as unskilled work in the heavy duty exertional level with an SVP of two[2].  (R. 155–57).  Plaintiff's past work as a fence erector is classified as unskilled work in the heavy duty exertional level with an SVP of five,[3] with non-transferrable skills.  (R. 158-59).

The ALJ asked the VE to hypothetically consider an individual who is capable of lifting seventy to eighty pounds with mild discomfort and is limited to unskilled work.  (R. 161).  The VE stated that such an individual would be able to Plaintiff's past work.  (R. 161).  The ALJ then asked the VE to hypothetically consider that same individual with a performance IQ of 68.  (R. 161).  The VE stated that such an individual would be able to perform all of Plaintiff's past work except the work as a fence erector.  However, the hypothetical individual would be capable of performing the fence erector work if he performed it only as a laborer.  (R. 161-62).

The VE then testified that if the individual was limited to lifting no more than fifty pounds, such an individual would be able to perform Plaintiff's past work as a farm worker

---

[2]  Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  SVP level two is anything beyond short demonstration up to and including one month. http://www.vocrehab.com/specific_vocational_preparation_help.htm.

[3]  SVP level five is over six months up to and including one year. http://www.vocrehab.com/specific_vocational_preparation_help.htm.

and small parts assembler, but not the work as a fence laborer or landscape laborer.  (R. 162).

### B. *Medical Background.*

Plaintiff underwent a consultative examination on September 26, 2005, performed by Pravin Gadani, M.D.  (R. 96-98).  Plaintiff reported that he underwent hernia surgery in 1982.  (R. 97).  Plaintiff reported being well since then.  (R. 97).  Plaintiff had not seen a doctor since 1982 or 1983 and recently experienced pain in July 2005.  (R. 97).  Upon examination, Dr. Gadani noted that Plaintiff appears to have had a direct hernia.  (R. 98).  Dr. Gadani noted that Plaintiff has had significantly good repair on the right side for approximately twenty-three years.  (R. 98).  Dr. Gadani's final impression was "[p]ossible left direct hernia and minimal weakness in the lower abdominal wall" with some evidence on the right side for the direct hernia, no evidence of an indirect hernia and the repair on the right side appeared to be holding very well.  (R. 98).

Plaintiff treated at the Sadler Clinic in March 2006.  (R. 106-11).  Plaintiff reported that he was unemployed but does fencing work in the summer.  (R. 107).  He reported pain at his hernia incision.  (R. 111).  Otherwise, Plaintiff had no complaints or problems.  (R. 111).

On April 10, 2006, Plaintiff underwent a psychological evaluation performed by William D. Thomas, M.S.  (R. 102-05).  Plaintiff reported that he is unemployed due to his inability to find and secure work and physical restrictions from an unrepaired hernia.  (R. 103).  Plaintiff stated that heavy lifting or manual labor causes severe pain.  (R. 103).  Plaintiff reported that he has an eighth grade education and dropped out of school in ninth grade when he obtained a work permit.  (R. 103).

Mr. Thomas performed the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III) test and the Wide Range Achievement Test.  (R. 102-04).  On the WAIS-III test, the Plaintiff earned a verbal IQ of 83, a performance IQ of 68, and a full-scale IQ of 74.  (R. 102).  This indicated that Plaintiff functioned at the Borderline Normal/Mild Mentally Retarded range of general cognitive ability.  (R. 104).  The Wide Range Achievement Test

revealed extensive regression in all areas of academics and that Plaintiff functions at a late elementary school level in reading, spelling and arithmetic.  (R. 104).  Mr. Thomas noted that Plaintiff is marginally literate, and he is able to read, write and perform basic arithmetic functions at a social survival level.  (R. 104).  Mr. Thomas diagnosed borderline intellectual functioning, vocational problems and a hernia.  (R. 104).  Mr. Thomas recommended that Plaintiff receive SSDI benefits "with respect to his cognitive and academic disabilities and to a lesser degree his physical limitations for which it is unknown as to whether his hernia is surgically correctable."  (R. 105).

## V. DISCUSSION.

Plaintiff alleges that the ALJ erred by: (1) failing to find that Plaintiff's hernia was a severe impairment; (2) failing to find that Plaintiff has a severe impairment of significantly subaverage general intellectual functioning; (3) failing to find that Plaintiff has a marginal education; (4) finding that Plaintiff is capable of performing his past relevant work as a farm worker and small parts assembler; and (5) finding that Plaintiff was not fully credible.  (Doc. 7 at 3-4).

### *A. Whether the ALJ erred in failing to find that Plaintiff's hernia was a severe impairment.*

Plaintiff argues that the ALJ erred in failing to find that his hernia was a severe impairment. (Doc. 7 at 6-8).  Plaintiff argues that an impairment is not severe "only when it does not significantly limit the physical or mental ability to do basic work activities."  (Doc. 7 at 6); 20 C.F.R. § 404.1521.  Defendant argues that Plaintiff failed to show that his status post hernia surgery significantly limits his ability to perform basic work activities.  (Doc. 10 at 12).

At step two of the sequential evaluation process, the burden is placed on the claimant and the burden is "not an exacting one."  *McCrea v. Commissioner of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004).  "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  *Newell v. Commissioner of Soc. Sec.*, 347 F.3d 541, 546 (3d

Cir. 2003). In *Newell*, the Plaintiff's claim was denied at step two. Here, the ALJ continued through the sequential evaluation process and concluded that Plaintiff was not disabled.

As the Court stated in *Sassone v. Soc. Sec. Comm.*, 165 Fed. App'x 954, 956 (3d Cir. 2006) (Non-Precedential), at step two, the Defendant must find if Plaintiff has a severe impairment. In the present matter, the ALJ found that Plaintiff has a severe impairment and he continued through the sequential evaluation process. Since the ALJ found that Plaintiff's severe impairment did not meet or equal a listed impairment, he proceeded to step four and found that Plaintiff had the RFC to perform his past relevant work as a farm worker and small parts assembler. Also, as the *Sassone* Court stated, "the claimant bears the burden of demonstrating an inability to perform her past relevant work." (Citation omitted). *Id*. Plaintiff argues that the ALJ erred at step two by not finding that his hernia was a severe impairment.

The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 28 C.F.R. § 404.1521(a). The regulations define "basic work activities" to mean "the abilities and aptitudes necessary to do most jobs." 28 C.F.R. § 404.1521(b). Examples of "basic work activities" include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." *Id*. "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea, supra,* 370 F.3d at 360 (quoting SSR 85-28). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Newell, supra,* 347 F.3d at 546. "Any doubt as to whether this

showing has been made is to be resolved in favor of the applicant." *McCrea, supra,* 370 F.3d at 360.

Plaintiff underwent hernia surgery in 1982. Plaintiff continued to work after the hernia surgery and stopped working in July 2005 when he was laid off. The ALJ noted that Plaintiff continued to work post hernia surgery, lifting up to eighty pounds with only mild discomfort. Plaintiff worked as a farm worker, laborer and assembler. The ALJ also noted that at the March 2006 examination at the Sadler Clinic, there were no abnormalities in relation to Plaintiff's hernia. (R. 16, 110-11).

At the April 2006 psychological evaluation with Mr. Thomas, Plaintiff reported an "unrepaired hernia." (R. 103). Mr. Thomas' axis III diagnosis was a hernia.[4] (R. 104). Mr. Thomas ultimately recommended that Plaintiff receive SSDI benefits "with respect to his cognitive and academic disabilities and to a lesser degree his physical limitations for which it is unknown as to whether his hernia is surgically correctable." (R. 105).

Dr. Gadani noted that Plaintiff underwent hernia surgery in 1982. (R. 97). Plaintiff reported being well since then. (R. 97). Upon examination, Dr. Gadani noted that Plaintiff appears to have had a direct hernia. (R. 98). Dr. Gadani noted that Plaintiff has significantly good repair on the right side for approximately twenty-three years. (R. 98). Dr. Gadani's impression was "[p]ossible left direct hernia and minimal weakness in the lower abdominal wall" with some evidence on the right side for the direct hernia, no evidence of an indirect hernia and the repair on the right side appeared to be holding very well. (R. 98).

On his disability application, Plaintiff reported that his lifting and carrying is limited due to his history of hernia and resulting pain. (R. 83).

---

[4] The *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (2000), published by the American Psychiatric Association, uses a multiaxial approach to diagnosis consisting of five axes. Axis III diagnoses are physical conditions which play a role in the development, continuance, or exacerbation of Axis I and Axis II diagnoses. *See* AllPsych Online *at* http://allpsych.com/disorders/dsm.html.

Based on the foregoing, there is a significant basis for a determination that the ALJ erred in failing to find that Plaintiff's hernia was a severe impairment.

### B. Whether the ALJ erred in failing to find that Plaintiff has a severe impairment of significantly subaverage general intellectual functioning.

Plaintiff's second argument is that the ALJ erred in finding that he did not meet or equal Listing 12.05, Mental Retardation. (Doc. 7 at 8). To meet the required level of severity for Listing 12.05, Plaintiff had to meet the A, B, C or D criteria of the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05. Listing 12.05 provides as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

Plaintiff specifically argues that he meets the criteria of Listing 12.05(C). (Doc. 7 at 8-9). To meet the requirements of the C criteria of Listing 12.05, Plaintiff had to show:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05(C).

The ALJ notes that Listing 12.05 requires that "deficits in adaptive functioning manifest during the developmental period, or onset before the age of 22." (R. 17). The ALJ states that Plaintiff has been able to work as a farm worker, laborer and assembler since that time. (R. 17). Thus suggesting that his deficits were not present before Plaintiff was 22 years old. (R. 17). The ALJ notes that Plaintiff has been able to complete tasks persistently, follow instructions and read the newspaper. (R. 17). Further, the ALJ states that even if he accepted Plaintiff's IQ score of 68, Plaintiff has no other impairment causing an additional and significant work-related limitation pursuant to Listing 12.05(C). (R. 17). The ALJ found that Plaintiff's hernia is not a significant impairment. He acknowledged that Plaintiff underwent hernia surgery in 1982, however Plaintiff has been performing heavy and medium duty work since that time. (R. 17). The ALJ found that Plaintiff suffers from the severe impairment of borderline intellectual functioning. (R. 16).

It is the claimant's burden to prove that his condition meets or equals the specific clinical requirements of a listed impairment, such as Listing 12.05, before he can be considered to be disabled *per se* without consideration of vocational factors, such as age, education, and work experience. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citations omitted). To be entitled to disability benefits, a claimant must show that all, not just some, of the criteria for a listing are met. *Zebley*, 493 U.S. at 530. The Commissioner must make the legal determination as to whether an impairment meets or equals a listing. *See* 20 C.F.R. § 404.1527(e)(1) and (2).

The existence of a medical condition does not demonstrate a disability for purposes of the Act. Thus, the issue was not whether Plaintiff suffered from the stated medical conditions, but whether those conditions result in a functional disability that prevents Plaintiff from performing substantial gainful activity. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990). Because we recommend remand for the ALJ to determine whether Plaintiff's hernia was a severe impairment, we recommend that the ALJ reevaluate Plaintiff's condition pursuant to Listing 12.05.

### C. Whether the ALJ erred in failing to find that Plaintiff has a marginal education.

Plaintiff next argues that Medical-Vocational Rule 203.01 applies and directs a finding of disabled. (Doc. 7 at 12).

In determining whether a claimant can perform other work, the ALJ may rely upon the Medical-Vocational Guidelines (Grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, Grids. *See Jesurum v. Sec. of HHS*, 48 F.3d 114, 117 (3d Cir. 1995). The Grids require the ALJ to consider the claimant's age, educational level, previous work experience, and RFC. If a claimant has substantial nonexertional limitations, then the Grids can only be used as a framework, and a vocational expert is needed. *See Knight v. Barnhart*, 195 F. Supp. 2d 569, 579 (D. Del. 2002). When the restrictions affect the claimant's ability to meet job demands other than strength demands, the limitations are nonexertional. Examples of such nonexertional limitations are difficulty functioning because of nervousness, anxiety, depression, difficulty seeing, hearing, maintaining concentration and remembering. 20

C.F.R. § 404.1569a(c). In this case, Plaintiff alleges exertional limitations.

The ALJ found that Plaintiff is capable of performing his past relevant work as a farm worker and small parts assembler. (R. 18). The Grid Rules are applicable when "the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). Thus, the Grid Rules would not apply and would not direct a finding of disabled.

Assuming *arguendo* that Plaintiff could not perform his past relevant work and that the Grid Rules apply, the Plaintiff states that Grid Rule 203.01 directs a finding of disabled. Grid Rule 203.01 directs a finding of disabled for an individual closely approaching retirement age, with marginal or no education, with unskilled or no previous work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 3, Grid Rule 203.01. The ALJ considered Plaintiff's age, education, work background and RFC and found that Plaintiff could perform his past relevant work as a farm worker and small parts assembler. (R. 18). The ALJ noted that Plaintiff has a seventh grade education. (R. 18). The ALJ determined that Plaintiff has a limited education, with a performance IQ of 68, has prior work experience of unskilled work and the RFC to perform medium work. (R. 17-18). Thus, the ALJ found that § 203.01 does not apply to direct a finding of disabled.

20 C.F.R. § 404.1564(b)(2) provides as follows:

*Marginal Education.* Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

20 C.F.R. § 404.1564(b)(2).

20 C.F.R. § 404.1564(b)(3) provides as follows:

*Limited Education.* Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 404.1564(b)(3).

When determining a claimant's education level, the grade level should be used "only when 'there is no other evidence to contradict it.'" *Green v. Barnhart*, 29 Fed. App'x 73, 75

(3d Cir. 2002) (citing 20 C.F.R. § 404.1564)). As stated, Plaintiff testified that he is able to read the newspaper, read magazines, count money and make change. (R. 141). However, Plaintiff states that the ALJ failed to consider Mr. Thomas' psychological evaluation. (Doc. 7 at 2, 13). Mr. Thomas concluded that Plaintiff has marginal abilities in reading, writing and arithmetic. (R. 104). He found that Plaintiff is an individual of borderline cognitive functioning with intellectual or cognitive deficits and/or weaknesses in all areas evaluated. (R. 104). Mr. Thomas' evaluation may be constitute evidence that Plaintiff has a marginal education. The ALJ failed to state what weight, if any, was accorded to Mr. Thomas' evaluation. Upon remand, the ALJ may evaluate whether substantial evidence supports a finding that Plaintiff has a marginal education.

### D. Whether the ALJ erred in finding that Plaintiff is capable of performing his past relevant work as a farm worker and small parts assembler.

Plaintiff argues that the ALJ erred in finding that he is capable of performing his past relevant work. (Doc. 7 at 14). At step four of the sequential evaluation process, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a farm worker and small parts assembler. (R. 18).

As stated, the Commissioner must consider whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. The ALJ determined that Plaintiff is capable of performing at least medium duty, unskilled work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). However, Plaintiff stated that lifting forty pounds, or not very much weight, causes pain at his hernia incision. (R. 145-46, 150).

Plaintiff also states that his intellectual level of functioning would preclude him from performing work as a farm worker or small parts assembler. (Doc. 7 at 15). According to the *Dictionary of Occupational Titles*, a farm worker and small parts assembler require a

13

Reasoning level 2, Mathematic level 1 and Language level 1.[5] (Doc. 7 at 15). Plaintiff states that he is not able to perform at a Reasoning level 2 which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."[6] (Doc. 7 at 15). Plaintiff argues that his IQ scores reveal that he has impaired intellectual functioning and would not be able to handle any detailed written or oral matter. (Doc. 7 at 15) (R. 102).

Because we recommend remand for the ALJ to determine whether Plaintiff's hernia is a severe impairment, we recommend that the ALJ reevaluate whether Plaintiff is capable of performing any of his past relevant work.

### E. Whether the ALJ erred in finding that Plaintiff was not fully credible.

Plaintiff's last argument is that the ALJ erred in his credibility determination. (Doc. 7 at 16). Plaintiff argues that there is no evidence to support a finding that he was not as limited as stated in his testimony. (Doc. 7 at 16). Defendant argues that the ALJ's credibility determination is supported by substantial evidence. (Doc. 10 at 24-26).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000). "The ALJ must indicate in his decision which evidence he has rejected and which

---

[5] *See Dictionary of Occupational Titles* at
http://www.occupationalinfo.org/42/421687010.html;
http://www.occupationalinfo.org/70/706684022.html;
http://www.occupationalinfo.org/73/739687030.html.

[6] *See Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer* at http://www.occupationalinfo.org/appendxc_1.html.

he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

An ALJ may find testimony to be not credible, but he must "give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985). Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067-68 (citing *Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 65 (3d Cir. 1987); *Ferguson,* 765 F.2d at 37).

In the instant matter, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms" but not to the intensity, persistence and limiting effects as alleged by Plaintiff. (R. 17). The ALJ noted that Plaintiff's allegations are not supported by the degree of treatment or clinical findings. (R. 18). Plaintiff underwent hernia surgery in 1982 and did not treat with another doctor again until March 2006. (R. 18). Plaintiff only takes over-the-counter Ibuprofen to treat his pain and it "works great." (R. 18, 151, 153). At Plaintiff's September 2005 examination with Dr. Gadani, he was able to get on and off the examination table normally, he could heel and toe walk and squat normally. (R. 18, 98). Plaintiff's ability to rise from a chair and from a squatting position were "not really affected." (R. 18, 98).

The ALJ also noted that, at Plaintiff's examination at the Sadler Clinic in March 2006, there were no GI abnormalities, his gait and station were normal, and cranial nerves, reflexes, sensation, judgment and memory were normal. (R. 18, 110-11). At the March 2006 examination, Plaintiff reported no complaints or problems except occasional pain at the hernia incision with heavy lifting. (R. 18, 111).

The ALJ further noted that the evidence does not establish that Plaintiff has deficits in adaptive functioning that manifested during the developmental period or before age 22. (R. 17). The ALJ noted that Plaintiff has worked since that time, lifting seventy to eighty pounds at work. (R. 17). Plaintiff is able to read the newspaper, read magazines and count money.

(R. 17, 141). Plaintiff stopped working because his boss hired a younger worker. (R. 17, 143-45). Plaintiff attempted to work since then, however he never obtained another job. (R. 17, 143-45). The ALJ found that such evidence does not comport with Plaintiff's complaints of disabling pain and limitations. (R. 17-18). However, in light of the recommendation of a remand, we recommend that the ALJ engage in a new credibility determination.

## V.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be GRANTED and that the case be remanded for further proceedings consistent with this report.

s/ Thomas M. Blewitt  
**THOMAS M. BLEWITT**  
**United States Magistrate Judge**

**Dated: January 31, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT P. TREGO, | : | CIVIL ACTION NO. **4:CV-07-002** |
| Plaintiff, | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## **NOTICE**

_____NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated January 31, 2008.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                        **s/ Thomas M. Blewitt**
                                                        **THOMAS M. BLEWITT**
                                                        **United States Magistrate Judge**

**Dated: January 31 2008**